## Case No. 9,935.

### MUNSON v. LYONS.

[12 Blatchf. 539.] [1]

Circuit Court, N. D. New York. June 15, 1875. [2]

RAILROAD COMPANIES—MUNICIPAL AID—VALIDITY—ESTOPPEL.

1. Bonds were issued, purporting, on their face, to have been issued by three persons as commissioners in behalf of the town of Lyons, appointed for that purpose by the county judge of Wayne county, in which such town was situated, and to be part of a series authorized by the determination of such county judge, duly rendered and entered of record pursuant to a petition of the taxpayers of the town, and pursuant to chapter 907 of the Laws of the State of New York of 1869, and the amendments thereto. The statute authorized the county judge to determine, on proof, whether the persons petitioning for the issue of the bonds represented a majority of the taxable property of the town. The bonds were issued in aid of the construction of a railroad. The petition contained conditions, that the terminus of the road should be at a specified point, and that the stock of the corporation which was to construct the road, which should be taken in exchange for the bonds, should include certain stock already taken by individuals residing in the town. In a suit against the town to recover the amount of unpaid coupons on the bonds, it was set up, in defence, that the bonds were void, because, as the petition contained said conditions, the county judge acquired no jurisdiction of the proceeding: *Held*, that, although the objection might be a good one, if raised on a direct review of the proceeding, it was of no avail in this suit.

[Cited in Bailey v. Lansing, Case No. 738; Smith v. Yates, Id. 13,131.]

[See Bailey v. Lansing, Case No. 738.]

2. When a petition is presented to the county judge, which sufficiently conforms to the statute to call for the exercise of judicial judgment, it is delegated to him to determine whether or not it is sufficient, and no error on his part can affect the validity of the bonds, when the question is raised collaterally.

[Cited in Rich v. Town of Mentz, 19 Fed. 726.]

3. The act of 1869 was amended by an act passed in 1871. The latter act introduced important changes in the proceedings, by amending various sections of the act of 1869, and substituting the new sections in place of the old sections, without in terms repealing the old sections. The proceedings in this case were begun before the act of 1871 was passed, and conformed to the old act up to the time of the passage of the new act, and after that were continued under the new act. It was objected, that the proceedings under the old act were deprived of all vitality by the passage of the new act: *Held*, that the objection was not a good one.

4. The town, having received and retained the stock which was issued in exchange for the bonds, cannot raise the objection, that the bonds and coupons were not made payable at the times directed by the statute.

On the trial of this action, the court ordered a verdict for the plaintiff [Edgar Munson] for $14,042.41 and reserved the case for further consideration. The plaintiff moved for judgment on the verdict, and the questions considered were presented upon requests on the part of the defendant, and exceptions taken upon the denial thereof.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed in 99 U. S. 684.]

W. F. Cogswell and S. C. Collins, for plaintiff.

H. L. Comstock and C. H. Roys, for defendant.

WALLACE, District Judge. This action is brought to recover the amount of certain coupons for payment of interest upon bonds issued in aid of the construction of the Sodus Bay, Corning and New York Railroad Company. The bonds, upon their face, purport to have been created and issued by David F. Cole and two others, as commissioners in behalf of the town of Lyons, appointed for that purpose by the county judge of Wayne county, and to be part of a series authorized by the determination of such county judge, duly rendered and entered of record, pursuant to a petition of the taxpayers of the town, and pursuant to chapter 907 of the Laws of the State of New York of 1869, and the amendments thereto. By the act of 1869, referred to, whenever a majority of the taxpayers of any municipal corporation, whose names appear upon the last preceding assessment roll of the corporation, as owning or representing a majority of the taxable property in the corporate limits of such corporation, shall, by a petition, verified, make application to the county judge of the county in which such corporation is situated, representing that such majority of taxpayers desire that the corporation shall create and issue its bonds to an amount specified, and invest them in the stock of a railroad company in the state, it shall be the duty of such county judge, after causing notice to be published, &c., to take proof as to the allegations in the petition, and, if it appear satisfactorily to him, that the petitioners do represent such majority, he shall so adjudge and determine, and cause his determination to be entered of record, and such judgment and the record thereof shall have the same force and effect as other judgments and records in courts of record in the state; and, if such county judge does so adjudge, it shall be his duty forthwith to appoint and commission three persons, taxpayers and residents of the corporation, to be commissioners, and thereupon such commissioners shall cause the bonds of such municipal corporation to be made and executed, and attested by their individual seals, and are empowered to subscribe, in the name of the municipal corporation, for the stock of the railroad company, and pay for the same by exchanging therefor the bonds so executed by them.

On the 6th of February, 1871, a petition was presented, duly verified, to the county judge of Wayne county, representing that the subscribers constituted the requisite majority of taxpayers of the town of Lyons, and desired that such town should create and issue its bonds to the amount of $150,000, and invest the same in the stock of the Sodus Bay, Corning, and New York Railroad Company, "provided that the terminus of said road be made at Nicholas Point, in the town of Huron," and praying that such proceedings be had for the purpose as are authorized by the statutes of the state in such case provided. The petition contained, also, this clause: "It is understood, that the stock so to be taken is to embrace and include the stock now already subscribed and taken by persons residing in said town of Lyons, amounting to the sum of $10,400." The county judge caused the requisite notice to be given, and proceeded to take proofs of the allegations in the petition, and, during the progress of taking the proofs, and, on May 12th, 1871, the legislature passed an act (chapter 925) to amend chapter 907 of the Laws of 1869, by which certain sections of that act were changed in important particulars, while, in other sections, no changes were made. None of the sections of the prior act were repealed in terms, but the sections referred to were modified by the words, "are amended to read as follows." All proceedings after the amendatory act was passed were conducted pursuant to the requirements of that act, and, on May 17th, 1872, the county judge adjudged that the allegations of the petition were proved, and appointed as commissioners the persons who executed the bonds, the coupons of which are those in suit. The act of 1871 required that the petition should be filed by the county judge, as part of the judgment roll, and that his judgment be entered of record in the clerk's office of his county. It also made provision for a review of the proceedings by certiorari, by which the appellate courts were authorized, "in appeals now pending, and in all future proceedings, to reverse, affirm, or modify the determination of the county judge, or remand the proceedings back to be reheard by him, or direct that he proceed de novo as if he had taken no action therein."

The statute under which the bonds were issued requires that they shall bear interest at the rate of seven per cent. per annum, payable semi-annually, and bear interest warrants corresponding in number and amounts with the several payments of interest to become due. The bonds issued are dated May 17th, 1872, and were issued on that day. The coupons are made payable on the first days of April and October in each year, and are for $35 each. At the time of issuing the bonds, the commissioners subscribed for stock of the railroad company, and, when they delivered the bonds, received in exchange certificates of stock. The plaintiff purchased the coupons in suit after they became due.

It is insisted, on behalf of the defendant, that the bonds in question are void, because the county judge never acquired jurisdiction of the proceeding pursuant to which the commissioners were appointed, as the petition was not in conformity to the statute, in that it contained conditions which were unauthorized. Of these, one required the railroad

company to locate the terminus of its road at a place named, and the other provided for the application of a portion of the bonds to be created to the purchase of stock then held by individuals resident in the town. Decisions of the courts of the state of New York are cited, which hold that the petition in such proceeding must be an unconditional one, and that, if it contains conditions, the entire proceeding is void. The decision of the court of appeals in the case of People v. Adirondac Co., countenances this position. It is there said, in the opinion: "If the petition is in a form not warranted, or is subject to any condition not authorized by the statute, it is simply void, and the officer acquires no jurisdiction under it." It is not to be denied, that this conclusion accords with the general doctrine, that all proceedings which, like the one under consideration, may impose a charge upon the property of the citizen without his consent, must be strictly pursued; and it is also to be conceded, that such conditions as were incorporated into the petition here are contrary to public policy, as they tend to subject measures which should be adopted solely from considerations of public welfare to the improper influences of personal or mercenary interests. Butternuts & Oxford Turnpike Co. v. North, 1 Hill, 518; Ft. Edward & Ft. Miller Plank-Road Co. v. Payne, 15 N. Y. 583. But, the cases referred to arose upon a direct review of the proceeding, and although, in the exercise of a revisory or appellate jurisdiction, it might well be held that unauthorized or vicious conditions in the petition were fatal to the proceeding, it does not follow that the county judge had no right to entertain the proceeding, and that his action under it was so wholly nugatory that his judgment was a nullity, and the bonds which were issued and negotiated void. It was not necessary so to decide; and such conclusion would seem to be antagonistic to the theory and spirit of the legislation under which such bonds are issued, and of the particular statute under consideration.

If it is true that the county judge never acquired jurisdiction because of the character of the petition, the bonds issued by the commissioners he appointed are invalid in the hands of innocent holders, because, in law, no commissioners were ever appointed, and no agents were ever empowered to represent the town. The supreme court of the United States has sustained, with steady hand, the rights of innocent holders of municipal bonds, which have been issued by agents in disregard of the limitations of their authority, but it has also recognized and enforced the distinction which exists between the want of power to act in behalf of the municipality and irregularities in the exercise of a power that has been conferred; and, if the bonds can be assailed collaterally, and defeated in the hands of innocent holders, whenever the officer upon whom jurisdiction is conferred to take cognizance of the proceeding errs in deciding that the proceeding is properly before him, this statute, and kindred legislation in many of the states of the Union, will prove highly discreditable, because, as will be seen, it is calculated to invite investment in these bonds with entire confidence in their validity, and this legislation will fail to meet the end for which it is designed, because the value of the bonds will be so precarious, that it will be difficult, if not impossible, to negotiate them advantageously. The object of such legislation is, to enable enterprises of public utility to be promoted, by obtaining the necessary means from municipal corporations interested in their success. As large sums are usually required, such legislation contemplates the creation of a class of obligations which will readily find their way to all the financial marts of the world, and will command the confidence of capitalists abroad and at home. As they are to be the obligations of municipalities of ample pecuniary ability to pay them, they will effectuate the end in view, if their validity is assured. To secure this, therefore, is a paramount consideration, for, otherwise, such legislation would be fruitless. Accordingly, by this legislation, these obligations are invested with ostensible indications of validity. They bear the attestation of public officers clothed by the legislature with apparent power to bind the municipalities of the state, whose malfeasance would cast dishonor not only upon the communities which they immediately represent, but also upon the state at large; and they bear the guaranty of a judicial determination that they are created in conformity with law. In short, these obligations are designed for negotiation, to a large extent, with those who are strangers to the merits of the particular enterprise for which they are created, and to the history of the particular proceedings under which they are issued, and who rely simply upon their value and their validity as obligations of municipalities of pecuniary ability, bearing the stamp of legislative sanction and official responsibility. To imply the intent that such obligations, after they are negotiated, shall be vulnerable to objections of the character here urged, would be to impute bad faith to the authors of such legislation towards those who are to be induced to invest in such bonds.

The provisions of the statute in question, as well as considerations of general application to similar legislation, favor the conclusion that all errors in the proceeding pursuant to which the bonds are issued are to be corrected in the proceeding itself. This statute invests the county judge, a responsible judicial officer, with power to determine whether the requisite majority of the taxpayers of a municipality within his county desire that it shall issue its bonds in aid of a railroad. It affords opportunity for a full investigation, by public notice to all who are concerned. It creates a proceeding capable of review by the highest tribunals of the state. It establishes ample

safeguards for the protection of the taxpayers. These provisions invest the bonds, when issued, with high assurances of their validity, and they indicate the intent that all errors in the proceeding shall be detected and defeated in the proceeding itself. It is, therefore, a reasonable construction of the statute. to hold, that, when a petition is presented to the judicial officer who is invested with cognizance of the proceeding, which sufficiently conforms to the statute to call for the exercise of judicial judgment, it is delegated to him to determine whether or not it is sufficient, and, while any error on his part may be the subject of revision by the appellate courts, it cannot affect the validity of the bonds, when raised collaterally. The injustice and inexpediency of permitting such defects as are here involved to invalidate the bonds when issued, has received legislative recognition by the amendments incorporated into the statute in 1871, after some of the state courts had held that the insertion of conditions in the petition was fatal to the proceeding, by which it is provided, that the petition may be absolute or conditional, and that non-compliance with any condition in it shall not invalidate the bonds. For these reasons, a conclusion is reached adverse to the defendant, on this branch of the case.

It is urged, as another objection to the validity of the bonds, that the proceeding under which they were issued became defunct because of the act of 1871. That act introduced important changes in the legislation regulating the proceedings for bonding municipal corporations, by amending various sections of the preceding act. It did not, in terms, repeal the former act, but, by amending various sections, substituted them in place of those in the former act. It is contended, for the defendant, that, although the proceedings taken for bonding prior to the act of 1871 were regular and complied with all the requirements then in force, and although those taken subsequent to the new act were in conformity with its requirements, nevertheless, the former act, as to the sections modified, was repealed by implication, to the same extent as though the sections had never existed, and proceedings under them were deprived of all vitality. This position cannot be sustained. While, doubtless, the legislature could have accomplished such a result, their intent to do so is not to be presumed, for, no construction will be tolerated that will give a retrospective operation to a statute. If the act of 1869 had been repealed by express terms, of course, all proceedings taken under it would have been as nugatory as if the legislature had said that all proceedings pending should be arrested and annulled. The subject of legislation was procedure, which was in every stage of progress at the time the amendments were passed. Many proceedings were pending at that time, doubtless before county judges and in appellate courts; and, that the legislature did not intend to suspend or annul such proceedings, is evident from some of the provisions of the new act. It is there provided, that, in case of review, in "appeals now pending, and in all future proceedings," the appellate court may reverse or modify the proceeding, or remand it back to the county judge to be reheard and determined, and may direct that he proceed de novo, as if he had taken no action. If it was intended to arrest and annul all proceedings which had not been terminated, why was the power conferred to permit the county judge to rehear the case under the original proceedings? The effect of such amendments upon pending proceedings is very satisfactorily determined by the court of appeals of this state, in considering a statute relating to procedure, which was amended in a manner similar to the act in question. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment. Judge Denio says: ."The rule contended for would lead to the grossest absurdities. Proceedings which were quite regular when taken would be made irregular or void by force of the subsequent statute; and confusion of every kind would be introduced." Ely v. Holton, 15 N. Y. 595: These considerations dispose of the second objection to the plaintiff's recovery.

The other defences which have been urged may be disposed of briefly. It is in proof that the defendant's bonds were delivered to the railroad company in exchange for stock for which the defendant had subscribed, and it does not appear that the defendant has ever offered to surrender the stock which it or its agents received. The defendant will not be heard to allege that it has not made its bonds, or the interest coupons, payable at the times directed by the statute, while it retains the stock it received in exchange for them. The doctrine of an equitable estoppel applies. Sedg. St. & Const. Law, p. 90. It results, that judgment must be entered for the plaintiff, on the verdict.

[Affirmed in 99 U. S. 684.]